Filed 7/24/26  In re M.J. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re M.J., a Person Coming Under the Juvenile Court Law. | B348053<br><br>(Los Angeles County Super. Ct. Nos. 22PSJP00002, 22PSJP00002A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and  Respondent.<br>    v.<br>M.C.,<br><br>Defendant and Appellant. | |

APPEAL from order of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

## INRODUCTION

Father appeals from the juvenile court's order denying his post-permanency Welfare and Institutions Code section 388[1] petition. In the petition, father asked the court to award him full custodial and parental rights including educational and developmental rights, along with a court-ordered name change for his daughter, M.J. The juvenile court had already terminated its dependency jurisdiction over M.J. in September 2023 after appointing paternal aunt as her legal guardian. Father does not challenge the merits of the court's denial of his section 388 petition. Instead, he contends the court and the Los Angeles County Department of Children and Family Services (the Department) did not comply with their initial inquiry duties under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.[2] We affirm.

The parties are familiar with the facts and procedural history of the case, so we do not restate those details in full here. Father raises one issue on appeal; we discuss only the points relevant to that issue.

## BACKGROUND

The family most recently came to the Department's attention after M.J. was born with a positive toxicology screen for amphetamines and marijuana.

On January 6, 2022, the Department filed a section 300 petition alleging M.J. (born Dec. 2021) was at a substantial risk of harm based on

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    Because ICWA uses the term "Indian," we do the same for consistency, although we recognize other terms are preferred. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1., overruled on other grounds by *In re Dezi C.* (2024) 1112, 1150.)

mother's substance abuse. The petition included an ICWA-010(A) Indian Child Inquiry Attachment form stating that mother was asked about M.J.'s Indian status on January 1, 2022, and the inquiry gave the social worker no reason to believe M.J. was or might be an Indian child. The Department's detention report documented that mother denied she and M.J. had any Native American ancestry. The Department indicated ICWA did not apply.

At the detention hearing on January 11, 2022, mother did not appear. The juvenile court stated mother had no American Indian ancestry but deferred making an ICWA finding until information was obtained from father. The court detained M.J. from parental custody and ordered monitored visitation for mother. The court ordered the Department to initiate a due diligence on father.

On February 9, 2022, the Department filed a jurisdiction/disposition report. The Department referred to the juvenile court's January 11, 2022 finding that ICWA did not apply as to mother. The Department also reported father was housed in Los Angeles County jail.

On July 20, 2022, the juvenile court found father to be M.J.'s biological father. The court also found no reason to know M.J. was an Indian child, and ICWA did not apply. The court ordered the Department to follow up with paternal grandmother about any paternal Native American ancestry. The court then sustained the Department's section 300 petition, as amended by interlineation, declared M.J. a dependent of the court, removed her from parental custody, and granted father reunification services. The court ordered M.J. placed with her paternal aunt.

In September 2022, father was transferred to Patton State Hospital because it was determined he was incompetent to face criminal charges.

Father was diagnosed with schizophrenia and seizures for which he was prescribed medication.

On February 27, 2023, the juvenile court found it had no reason to know that M.J. was an Indian child as defined by ICWA. The parents were directed to keep the Department, their attorneys, and the court aware of any new information relating to possible ICWA status. The court subsequently terminated father's reunification services and set a section 366.26 hearing to determine M.J.'s permanent plan.

In March 2023, father was transferred back to Los Angeles County jail, and on May 12, 2023, he was released from custody.

On May 23, 2023, the Department filed a section 366.26 report, which detailed its ICWA investigation and the court's ICWA findings. The Department stated it would "continue to inquire with any known relatives as to ICWA through the life of the case." The Department identified legal guardship with paternal aunt as M.J.'s permanent plan.

On September 1, 2023, the juvenile court held the section 366.26 hearing. The court selected legal guardianship as M.J.'s permanent plan, appointed paternal aunt as M.J.'s legal guardian, and terminated dependency jurisdiction over M.J. with Kinship Guardianship Assistance Payment (Kin-GAP) funding in place.[3] Father did not appeal from the juvenile court's orders or findings made at the section 366.26 hearing.

_____

[3] "The Kin-GAP program is a state program that provides ongoing funding for children who exit the dependency system to live with relative legal guardians. In order to receive funding under the program the county welfare agency must enter into a written binding agreement with the relative guardian and dependency jurisdiction must be terminated. (§§ 11386, 11387.)" (*In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1211 & fn. 2.) The court here terminated its dependency jurisdiction. (*Id.* at p. 1216; § 366.3, subd. (a)(3).) The court nevertheless retained jurisdiction "over the guardianship."

4

Almost two years later, on June 16, 2025, father filed a section 388 petition in propria persona asking the juvenile court to award him full custodial and parental rights including educational and developmental rights, along with a court-ordered name change for M.J. The court reappointed counsel for father and M.J. and set a hearing on the section 388 petition.

In its report responding to father's petition, the Department reiterated the juvenile court's earlier finding that ICWA did not apply. The Department detailed its attempts to interview father and assess his circumstances. Paternal aunt expressed concerns about father's request for custody because she did not believe he was able to properly care for M.J. The Department recommended the court deny father's section 388 petition.

At the August 4, 2025 hearing, counsel for father asked the juvenile court to reinstate father's reunification services and/or to release M.J. to father's custody. She argued father's circumstances had changed because he was no longer in custody and he had completed a parenting program and undergone a psychiatric evaluation during his incarceration. Counsel also stated that father visited M.J., albeit infrequently, and he was gainfully employed and had a stable home. She further argued it was in M.J.'s best interest to grant the petition because father was actively taking steps to reunify with M.J. and it was best for her to be with father.

Counsel for M.J. asked the court to deny father's petition and asserted that father's circumstances were "changing but have not yet changed." In addition, counsel contended it appeared father was "not living where he indicates he resides, and he's not being completely truthful about his circumstances." And despite father being diagnosed with schizophrenia in 2023 while incarcerated, he continued to deny his diagnosis and reported he

was not on any medication or receiving any ongoing mental health treatment or psychiatric care. Counsel for M.J. concluded that father was unable to provide M.J. with constant care and supervision. The Department joined in counsel's argument.

The court subsequently denied father's section 388 petition. The court found father's circumstances had not changed and the requested modification would not be in M.J.'s best interest. Father appealed.

## DISCUSSION

Father argues that the juvenile court and the Department did not comply with their initial inquiry duties under ICWA. The Department counters that the section 388 proceeding "is not an Indian child custody proceeding" requiring compliance with ICWA. Father did not file a reply brief to respond to this argument. We agree with the Department.

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128–1129 (*Dezi C.*).) An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (a) [adopting federal definition].)

California law imposes on the juvenile court and the Department " 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be

6

an Indian child." (*Dezi C., supra*, 16 Cal.5th at pp. 1131–1132; see § 224, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) The initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).) The juvenile court may find the ICWA does not apply to a child's proceeding if it finds DCFS's "inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C., supra*, 16 Cal.5th at p. 1134; see § 224.2, subd. (i)(2).)

ICWA inquiries are required for "all Indian child custody proceedings." (§ 224, subd. (d); *Dezi C., supra*, 16 Cal.5th at pp. 1129, 1130.) An "Indian child custody proceeding" is "a hearing . . . during a juvenile court proceeding . . . that may culminate in" " 'foster care placement,' " including "placement in the home of a legal guardian," " '[t]ermination of parental rights,' " " '[p]readoptive placement,' " or " '[a]doptive placement.' " (§ 224.1, subd. (d)(1); see also § 224.3, subd. (a) [ICWA notice "shall be provided for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement"]; 25 U.S.C. § 1903(1)(i)-(iv) [" 'child custody proceeding' " means and includes " 'foster care placement,' " " 'termination of parental rights,' " " 'preadoptive placement,' " and " 'adoptive placement' "].)

Father's post-permanency section 388 proceeding is not an Indian child custody proceeding. (*In re N.F.* (2023) 95 Cal.App.5th 170, 180.) None of the above outcomes was possible at that hearing. (§ 224.1, subd. (d)(1); *In re L.D.*

7

(2019) 32 Cal.App.5th 579, 582–583 [order made at a gun surrender hearing not an Indian child custody proceeding because none of the outcomes set forth in § 224.1, subd. (d)(1) was possible].) Rather, father was seeking to reunify with M.J. and have her ultimately returned to his care. (See *In re A.T.* (2021) 63 Cal.App.5th 267, 274 [ICWA not implicated in a proceeding when dependent child is placed with a parent].) Accordingly, ICWA does not apply here. (*In re N.F., supra,* at p. 180 [ICWA did not apply to a post-permanency hearing because it was not an Indian child custody proceeding].)[4]

## DISPOSITION

The juvenile court's August 4, 2025 order denying father's section 388 petition is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

ZUKIN, P. J.

We concur:

MORI, J.

TAMZARIAN, J.

---

[4] The two cases relied on by father (*In re Claudia R.* (2025) 115 Cal.App.5th 76 and *In re Antonio R.* (2022) 76 Cal.App.5th 421) are readily distinguishable. Both cases involved a parent appealing from the juvenile court's order terminating parental rights under section 366.26, not a denial of a post-permanency section 388 petition.